IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| F. EUGENE LECIEJEWSKI AND<br>WILMA M. LECIEJEWSKI | )<br>)<br>) | |
| Plaintiffs, | )<br>) | |
| v. | ) | 1:09-cv-995 |
| SOUTHERN ENTERTAINMENT CORP. | )<br>)<br>) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

CATHERINE C. EAGLES, District Judge.

      Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Southern Entertainment Corporation ("SEC") filed a motion to dismiss the first amended complaint of Plaintiffs F. Eugene Leciejewski and Wilma M. Leciejewski. (Doc. 15.) SEC contends that the Leciejewskis' claims are barred by the three-year statute of limitations applicable to breach-of-contract claims under N.C. Gen. Stat. § 1-52(1). (*Id.* at 1.) The court exercises jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1).

**I.    BACKGROUND**

      On August 17, 1995, SEC entered into an advertising agreement ("Advertising Agreement") with Semora Broadcasting, Inc. ("Semora"). (Doc. 14 at 2 ¶ 3; Doc. 14-2 at 1, 7.) At the time the parties executed the Advertising Agreement, Semora was the radio licensee of call sign WYNC-AM in Yanceyville, North Carolina. (Doc. 14 at 2 ¶ 3; Doc. 14-2 at 1.) SEC

was the radio permittee of call sign WQVA-FM in Semora, North Carolina.[1]  (Doc. 14 at 2 ¶ 3; Doc. 14-2 at 1.)

The term of the Advertising Agreement was "for a period of forty-eight months from [its] effective date."  (Doc. 14-2 at 2; *see* Doc. 14 at 2 ¶ 3.)  The "effective date" was "the sooner of August 18, 1997," or the date of the FCC's final approval of the application to assign the construction permit for call sign WQVA-FM ("Assignment Application").  (Doc. 14-2 at 2; *see* Doc. 14 at 2 ¶¶ 3–4.)  Because the FCC approved the Assignment Application on July 12, 2005 (Doc. 14 at 5 ¶ 11), the Advertising Agreement took effect on the earlier date of August 18, 1997.  The Advertising Agreement terminated on August 18, 2001.  (*See* Doc. 14-2 at 2.)

Under the Advertising Agreement, Semora agreed to "air certain radio advertising and promotional announcements" on its WYNC-AM station on behalf of SEC's WQVA-FM station.  (*Id.* at 1; *see* Doc. 14 at 2 ¶ 3.)  The parties also agreed that SEC would produce the advertising and promotional announcements and provide them to Semora.  (Doc. 14-2 at 1, 2.)  In exchange, SEC agreed to pay Semora a lump sum of "$55,000 within ten (10) business days" of the FCC's final approval of the Assignment Application and to make "[o]ne $979 payment per month paid in advance commencing thirty (30) days after the effective date for each of the 48 months of this agreement."  (*Id.* at 8; *see id.* at 1.)

---

[1]  The Federal Communications Commission ("FCC") regulates the licensing and operation of broadcast radio stations.  *See generally* 47 U.S.C. §§ 301-39; 47 C.F.R. pt. 73.  A party must file an application for a construction permit before building a new broadcast radio station.  47 U.S.C. § 319(a).  In the application, the party must show that it is qualified to construct and operate the station and that its proposed facility will not cause harmful interference to any other station.  *Id.*  If the FCC grants the application for a construction permit, the applicant is considered to be a "*permittee*" and must build the station within a specified period of time.  *Id.* § 319(b).  After the permittee constructs the radio station, it must file a license application to certify that the station complies with the applicable technical and other requirements.  *Id.* § 319(c).  If the FCC grants the license application, the permittee is considered to be a "*licensee*" and may operate the station for a specified period of time.  *Id.* §§ 319(c), 307(c)(1).

On October 21, 1996, Semora assigned its right to payment under the Advertising Agreement to the Leciejewskis. (Doc. 14-3 at 2; *see* Doc. 14 at 3 ¶ 6.) Between November 4, 1996, and September 19, 1997, SEC sent three letters to the Leciejewskis' attorney about its obligations under the Advertising Agreement. (Docs. 14-4, 14-5, 14-6.) In the letters, SEC acknowledged Semora's assignment of the right to payment to the Leciejewskis (Doc. 14-4 at 1) and made various statements concerning the delays it was encountering with the FCC and its intention to comply with the Advertising Agreement (*id.*; Doc. 14-5 at 1; Doc. 14-6 at 1).

On September 20, 2006, the Leciejewskis filed a complaint in the Superior Court of Person County, North Carolina, alleging breach of contract. (Doc. 14 at 7 ¶ 19; *see* Doc. 2 at 4 ¶ 20.) The Leciejewskis voluntarily dismissed the complaint on November 24, 2008, and re-filed it on November 19, 2009. (Doc. 14 at 7 ¶ 19.) On December 23, 2009, SEC removed the action to federal court, pursuant to 28 U.S.C. §§ 1441 and 1446. (Doc. 1 at 1–4.) On March 17, 2010, the Leciejewskis amended their complaint; they seek payment of amounts due under the Advertising Agreement, as well as interest, attorney's fees, and costs. (Doc. 14 at 7.)

## II.  MOTION TO DISMISS

On April 5, 2010, SEC filed a motion to dismiss the first amended complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 15 at 1.) To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

SEC contends that the Leciejewskis failed to file their initial complaint within the three-year statute of limitations for a breach of contract under N.C. Gen. Stat. § 1-52(1). (Doc. 15 at 1; Doc. 16 at 6–7; Doc. 20 at 2.) The Leciejewskis respond that the ten-year statute of limitations

under N.C. Gen. Stat. § 1-47(2) governs this action because the parties executed the Advertising Agreement under seal or, in the alternative, that their complaint was timely under the doctrine of equitable estoppel. (Doc. 14 at 5 ¶ 12; Doc. 19 at 8–9.) North Carolina law applies to the statute-of-limitations and equitable-estoppel issues.[2]

### A. Statute of Limitations

The first issue is whether the applicable statute of limitations bars this action. To resolve this issue, the court must determine (1) whether to reach the merits of this affirmative defense now; (2) whether the applicable statute of limitations is three or ten years; and (3) whether the Leciejewskis initiated their action within the applicable statute of limitations.

#### 1. Affirmative Defense

Initially, the court must determine whether to resolve the statute-of-limitations issue at this early stage of the proceedings. "[A] motion to dismiss filed under [Rule] 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense, such as the defense that the plaintiff's claim is time-barred." *Goodman v. Praxair Servs., Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc). In "relatively rare circumstances," however, a court may reach a statute-of-limitations defense if and only if "all facts necessary to

---

[2] In a diversity action, courts apply the choice-of-law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 495–97 (1941). Under North Carolina law, courts apply the *procedural* law of the forum state. *Charnock v. Taylor*, 26 S.E.2d 911, 913 (N.C. 1943). "[S]tatutes of limitations are clearly procedural." *Boudreau v. Baughman*, 368 S.E.2d 849, 854 (N.C. 1988). Thus, North Carolina law applies to the statute-of-limitations issue.

Under North Carolina law, "where parties to a contract have agreed that a given jurisdiction's *substantive* law shall govern the interpretation of the contract, such a contractual provision will be given effect." *Szymczyk v. Signs Now Corp.*, 606 S.E.2d 728, 732 (N.C. Ct. App. 2005) (emphasis added). Equitable estoppel is a substantive issue. *Mitchell, Brewer, Richardson, Adams, Burge & Boughman, PLLC v. Brewer*, 705 S.E.2d 757, 770 (N.C. Ct. App. 2011). In this case, the parties agreed that the Advertising Agreement "shall be construed in accordance with the laws of the state of North Carolina." (Doc. 14-2 at 6.) Thus, North Carolina law also applies to the equitable-estoppel issue.

4

the affirmative defense 'clearly appear[] on the face of the complaint.'" *Id.* (emphasis omitted) (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)). A movant must "show . . . that the plaintiff's potential rejoinder to the affirmative defense was foreclosed by the allegations in the complaint." *Id.* at 466.

In this action, the Leciejewskis themselves raise the statute-of-limitations issue in the Amended Complaint. (Doc. 14 at 5 ¶¶ 12–13.) The Leciejewskis allege that the ten-year statute of limitations applies because "the Advertising Agreement is an instrument under seal." (*Id.* ¶ 13.) The Leciejewskis attach the Advertising Agreement and three letters they received from SEC to the first amended complaint. (Docs. 14-4, 14-5, 14-6.) In combination, these documents provide all dates and information necessary to determine the applicable statute of limitations and whether the Leciejewskis initiated their action within that limitations period.

2. **Statute-of-Limitations Period**

The statute of limitations under North Carolina law is three years for a breach of contract. N.C. Gen. Stat. § 1-52(1). If the parties executed the contract under seal, however, the statute of limitations is ten years. *Id.* § 1-47(2).

Under North Carolina law, "[t]he determination of whether an instrument is a sealed instrument . . . is a question for the court." *Dunes S. Homeowners Ass'n v. First Flight Builders, Inc.*, 459 S.E.2d 477, 480 (N.C. 1995) (alternation in original) (internal quotation marks omitted). While courts have been relatively liberal in construing the term "seal" to encompass a wide variety of marks, scrawls, and pen flourishes,[3] *something* representing a seal or that can be

---

[3] *See, e.g.*, *Fed. Reserve Bank of Richmond v. Kalin*, 81 F.2d 1003, 1006–07 (4th Cir. 1936) (applying North Carolina law to hold that the word "seal" in parentheses is sufficient to constitute a seal); *Cameron v. Martin Marietta Corp.*, 729 F. Supp. 1529, 1530–31 (E.D.N.C. 1990) (applying North Carolina law to hold that the word "seal" next to the signature is sufficient to constitute a seal); *Mobil Oil Corp. v. Wolfe*, 252 S.E.2d 809, 810, 810 n.1 (N.C. 1979)

5

identified as a seal must be present before the contract can be deemed to be executed under seal.[4]

*See Biggers v. Evangelist*, 321 S.E.2d 524, 527 (N.C. Ct. App. 1984). A testimonium clause, such as "set their hand and seal," is not enough, by itself, to make an instrument a sealed instrument.[5] *See Patterson v. Galliher*, 29 S.E. 773, 773 (N.C. 1898); *see also Garrison*, 246 S.E.2d at 147–49.

---

(holding that an instrument is sealed when the symbol "(L.S.)," which "is an abbreviation for 'Locus sigilli[]' . . . [or] 'the place of the seal,'" appeared below each signature (quoting Black's Law Dictionary 1014 (Rev. 4th ed. 1968)); *Sec. Nat'l Bank of Greensboro v. Educators Mut. Life Ins. Co.*, 143 S.E.2d 270, 277–78 (N.C. 1965) (holding that the preprinted word "seal" was sufficient to meet the seal requirement); *Allsbrook v. Walston*, 193 S.E. 151, 152 (N.C. 1937) (holding that the word "seal" in brackets opposite a party's signature was a valid seal); *Hughes v. Debnam*, 53 N.C. 127, 131 (1860) (holding that a square piece of paper with a wafer constitutes a seal); *Garrison v. Blakeney*, 246 S.E.2d 144, 148–49 (N.C. Ct. App. 1978) (holding that the word "sign" may be sufficient to signify a seal).

[4] When the existence of a seal is a question for the jury, courts also require the contract to contain *something* that arguably constitutes a seal. *E.g.*, *Humphreys v. Finch*, 1 S.E. 870, 870 (N.C. 1887) (noting that the only question submitted to the jury was whether the seal was "opposite the name of the defendant when his signature was affixed"); *Yarborough v. Monday*, 13 N.C. 493, 493 (1830) (stating that a dispute over the ownership of a seal is a jury question); *Ingram v. Hall*, 2 N.C. 193, 200 (1795) ("[T]he law . . . left it to the jury to decide whether [the seal] was the seal of the party or not"); *Sec. Nat'l Bank of Greensboro*, 143 S.E.2d at 277 ("Whether the defendant adopted the seal is a question for the jury."); *Pickens v. Rymer*, 90 N.C. 282, 283 (1884) ("[W]hether the party subscribing to a deed, opposite whose name there is no seal, intended to adopt the seal of another signer who has made his seal, is a question of fact for the jury").

[5] Many jurisdictions likewise have concluded that a recital, attestation clause, or testimonium clause, standing alone, cannot transform an unsealed contract into a sealed contract. *See, e.g.*, *Moses v. United States*, 166 U.S. 571, 584 (1897); *Polkowski v. Huskie Portfolio, LLC (In re Polkowski)*, 303 B.R. 585, 587 (Bankr. M.D. Pa. 2003) (applying Pennsylvania law); *Auditor v. Woodruff*, 2 Ark. 73, 84 (1839); *Beach v. Beach (In re Estate of Beach)*, 107 A.2d 629, 634 (Conn. 1954); *Monroe Park v. Metro. Life Ins. Co.*, 457 A.2d 734, 736 n.5 (Del. 1983); *Murray v. Wells Fargo Home Mortg.*, 953 A.2d 308, 318 (D.C. 2008); *Williams v. Florida*, 6 So. 831, 832 (Fla. 1889); *Chastain v. L. Moss Music Co.*, 64 S.E.2d 205, 206 (Ga. Ct. App. 1951); *Jackson v. Sec. Mut. Life Ins. Co.*, 84 N.E. 198, 200 (Ill. 1908); *Hubbard v. Beckwith*, 4 Ky. (1 Bibb) 492, 493 (1809); *Hudson v. Webber*, 72 A. 184, 187 (Me. 1908); *State ex rel. Gilkeson v. Humbird*, 54 Md. 327, 329–30 (1880); *Fid. Union Trust Co. v. Fitzpatrick*, 46 A.2d 837, 839 (N.J. 1946); *Empire Trust Co. v. Heinze*, 152 N.E. 266, 267 (N.Y. 1926); *D.M. Osborne & Co. v. Hubbard*, 25 P. 1021, 1021 (Or. 1891); *In re Hacker*, 15 A. 500, 501 (Pa. 1888); *City of Providence ex rel. Mayo v. Goldenberg*, 117 A. 225, 227 (R.I. 1922); *Town of Barnet v. Abbott*, 53 Vt. 120, 128–29 (1880); *Hill v. Corbett*, 204 P.2d 845, 847 (Wash. 1949); *Comley v. Ford*, 64

Here, the Advertising Agreement contains a testimonium clause above the signature lines providing: "WHEREFORE, the parties have set their hand and seal this 17th day of August, 1995." (Doc. 14-2 at 7.) However, the signatures of Semora and SEC were not accompanied by any word, mark, scrawl, or pen flourish indicative of a seal. (*Id.*) As in *Patterson*, this testimonium clause is insufficient as a matter of law to create a contract under seal. In the absence of a seal, the three-year statute of limitations applies to this breach-of-contract action.

### 3. Timeliness

For a breach-of-contract claim under North Carolina law, "the statute of limitations . . . begins to run on the date the promise is broken." *Harrold v. Dowd*, 561 S.E.2d 914, 918 (N.C. Ct. App. 2002) (internal quotation marks omitted); *see* N.C. Gen. Stat. § 1-15(a). The statute of limitations generally begins to run on installment contracts "from the time each individual installment becomes due." *Finova Capital Corp. v. Beach Pharmacy II, Ltd.*, 623 S.E.2d 289, 292 (N.C. Ct. App. 2005) (internal quotation marks omitted).

In this action, the statute of limitations had expired before the Leciejewskis filed their initial complaint in state court. SEC's alleged breach of its contractual duty to provide Semora with a copy of any advertising and promotional announcements and to make installment payments began to run, at the latest, in mid-2001, which was forty-eight months after the effective date of the Advertising Agreement.[6] SEC's obligation to make the lump-sum payment

---

S.E. 447, 450 (W. Va. 1909) (citing *Patterson v. Galliher*, 29 S.E. 773 (N.C. 1898)); *Skelly Oil Co. v. Peterson*, 43 N.W.2d 449, 453 (Wisc. 1950); *see also, e.g.*, 3-10 Corbin on Contracts § 10.4 ("[P]robably the majority of the state courts absent a contrary statute did not view recitals as either necessary or conclusive.").

[6] It seems doubtful that the Leciejewskis have standing to raise a claim regarding the alleged failure to provide copies of the advertising and promotional announcements, since Semora only assigned them the right to receive payment. However, the parties have not briefed this issue, so the court will leave that question to a later stage in the proceedings.

7

never matured.[7] Thus, the statute of limitations had started to run more than five years before the Leciejewskis filed their initial complaint on September 20, 2006.

B. **Equitable Estoppel**

"[A] defendant may properly rely on a statute of limitations as a defensive shield against 'stale' claims, but may be equitably estopped from using a statute of limitations as a sword, so as to unjustly benefit from its own conduct which induced a plaintiff to delay filing suit." *Friedland v. Gales*, 509 S.E.2d 793, 796 (N.C. Ct. App. 1998).

> [T]he essential elements of an equitable estoppel as related to the party estopped are: (1) [c]onduct which amounts to a false representation or concealment of material facts, or at least, which is reasonably calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party afterwards attempts to assert; (2) intention or expectation that such conduct shall be acted upon by the other party, or conduct which at least is calculated to induce a reasonably prudent person to believe such conduct was intended or expected to be relied and acted upon; (3) knowledge, actual or constructive, of the real facts. As related to the party claiming the estoppel, they are: (1) lack of knowledge and the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party sought to be estopped; and (3) action based thereon of such a character as to change his position prejudicially.

*Gore v. Myrtle/Mueller*, 653 S.E.2d 400, 405 (N.C. 2007) (first alteration in original) (internal quotation marks omitted).

"Actual fraud, bad faith, or an intent to mislead or deceive is not essential to invoke the equitable doctrine of estoppel." *Duke Univ. v. Stainback*, 357 S.E.2d 690, 692 (N.C. 1987). "It is the subsequent inconsistent position, and not the original conduct[,] that operates to the injury

---

[7] The Advertising Agreement provides that SEC shall pay "$55,000 within ten (10) business days" of the FCC's final approval of the Assignment Application. (Doc. 14-2 at 8.) This final approval occurred on July 12, 2005 (Doc. 14 at 5 ¶ 11), within three years of the Leciejewskis' filing of their initial complaint. However, the Advertising Agreement had, by its terms, terminated as of August 18, 2001. Thus, the Leciejewskis' right to the lump-sum payment did not mature before the termination of the Advertising Agreement. (*See* Doc. 14-3 at 1 (indicating, in a letter from the Leciejewskis' attorney to SEC, that the Leciejewskis understood that the payment obligation might not mature before the termination of the Advertising Agreement)).

8

of the other party." *Hensell v. Winslow*, 416 S.E.2d 426, 430 (N.C. Ct. App. 1992). "The tolling of the statute may arise from the honest but entirely erroneous expression of opinion as to some significant legal fact." *Duke Univ.*, 357 S.E.2d at 693.

While the allegations in the complaint itself are quite thin and conclusory, taking those allegations as true and also considering the correspondence attached to the complaint, the Leciejewskis have presented facts that are sufficient to raise an issue regarding the application of equitable estoppel against SEC, at least at this stage. *See Iqbal*, 129 S. Ct. at 1949.

On September 19, 1997, two days after the due date of its first installment payment under the Advertising Agreement (Doc. 14-2 at 1, 2, 8; Doc. 14 at 5 ¶ 11), SEC wrote the Leciejewskis' attorney that "[t]he effective date of the Advertising Agreement . . . is subject to receiving [the FCC's final approval] of the [Assignment Application]" (Doc. 14-6 at 1), which did not occur until July 12, 2005 (Doc. 14 at 5 ¶ 11). SEC also stated that it would "meet all of its contractual obligations, including the Advertising Agreement," upon the FCC's final approval of the Assignment Application. (Doc. 14-6 at 1.) In other words, after failing to make its first payment to the Leciejewskis, SEC misstated the effective date so as to delay its obligation to pay. These statements are inconsistent with SEC's current litigation position that the effective date of the Advertising Agreement was August 18, 1997. (Doc. 16 at 6; Doc. 20 at 2.)

While the Leciejewskis have not specifically alleged that they relied on SEC's inconsistent statements and took action to their detriment, it is reasonable to infer from the allegations in the amended complaint and the attached documents that the Leciejewskis relied on SEC's statements concerning its intent to pay once FCC approval was received when they did not file suit or otherwise proceed with their collection efforts.

Drawing all factual inferences in the plaintiffs' favor as is required at this early stage of the proceedings, *see Hui v. Casteneda*, 130 S. Ct. 1845, 1849 n.1 (2010); *Nemet Chevrolet, Ltd. v. Consumeraffairs.com*, 591 F.3d 250, 253 (4th Cir. 2009), the Leciejewskis have alleged sufficient facts which, if proved, would support the application of equitable estoppel. Whether there is evidence to support these allegations is a question for later proceedings.

## III. CONCLUSION

For the reasons set forth above, the Leciejewskis failed to file their breach-of-contract action against SEC within the applicable three-year statute of limitations. However, the Leciejewskis have alleged facts which, if proven, arguably demonstrate that SEC should be equitably estopped from asserting this defense.

IT IS THEREFORE ORDERED THAT Southern Entertainment Corporation's motion to dismiss (Doc. 15) is DENIED.

/s/
United States District Judge

April 15, 2011